**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

GEOFRIEND, LLC,

Plaintiff,

v.

FRIENDFINDER NETWORKS, INC.,
FRIENDFINDER CALIFORNIA, INC.,
VARIOUS, INC., and GLOBAL ALPHABET,
INC.,

Defendants.

**Case No.: 4:16-CV-00535 ALM**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 2

III.    APPLICABLE LAW ............................................................................................... 3

    A.      A. Rule 12(b)(6) Standard ........................................................................... 3

    B.      Patent-Ineligibility Under 35 U.S.C. § 101 ............................................... 4

IV.     ARGUMENT ........................................................................................................... 5

    A.      Plaintiff's Infringement Allegations Fail To  State A Claim
          Upon Which Relief Can Be Granted ......................................................... 5

    1.      Direct Infringement ..................................................................................... 5

    2.      Induced Infringement ................................................................................... 7

    3.      Contributory Infringement .......................................................................... 9

    4.      Plaintiff's Claims Were Copied from an Unrelated Case. ........................ 10

    B.      The Patent-in-Suit Is Directed to Unpatentable  Subject Matter
          and Claims an Abstract Idea ................................................................... 11

    1.      *Alice* Step One: The '414 patent claims are "directed to"  the
          abstract idea of connecting people who desire to  carry out a
          group social activity at a designated location. ........................................ 11

    2.      *Alice* Step Two: No inventive concept is present in the '414 patent claims. ................ 18

        a.      Dependent claims 2–30 add nothing of substance to claim 1,
             and are similarly patent-ineligible. ....................................... 19

        b.      The '414 patent claims fail the Machine-or-Transformation Test. ...................... 21

        c.      Claims 31–34 are Patent-Ineligible ....................................... 22

CONCLUSION ................................................................................................................ 24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013).................................................................17

*Affinity Labs of Tex. v. DIRECTV, LLC*,
    No. 2015-1845, 2016 U.S. App. LEXIS 17371 (Fed. Cir. Sep. 23, 2016) ...........................20

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)................................................................6, 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ....................................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................1, 3

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016).................................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................1, 3

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)..................................................................7

*Blackburn v. City of Marshall*,
    42 F.3d 925 (5th Cir. 1995) .....................................................................4

*Content Extraction & Transmission LLC v. Wells Fargo, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)..............................................................16, 17

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005)..................................................................9

*CyberSource Corp. v. Retail Decisions, Inc.*
    654 F.3d 1366 (Fed. Cir. 2011)..........................................................4, 22, 23

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014).................................................................19

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)..................................................................8

*Electric Power Grp., LLC v. Alstom S.A.*,
    No. 2015-1778, 2016 U.S. App. LEXIS 13861 (Fed. Cir. Aug. 1, 2016) ..............................17

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d. 1327 (Fed. Cir. 2016)....................................................................................................16

*InMotion Imagery Techs. v. Brain Damage Films*,
    No. 11-414, 2012 WL 3283371 (E.D. Tex. Aug. 10, 2012)....................................................10

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir 2015)..............................................................................................16, 17

*LBS Innovations, LLC v. Nokia USA Inc.*,
    No. 15-1972, 2016 U.S. Dist. LEXIS 80303 (E.D. Tex. June 21, 2016).............................4, 6

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016).............................................................................................16, 18

*Motio, Inc. v. ESP Software LLC*,
    154 F.Supp.3d 434 (E.D. Tex. 2016) ..........................................................................................19

*Norman IP Holdings, LLC v. Chrysler Grp. LLC*,
    No. 13-278, 2014 U.S. Dist. LEXIS 185498 (E.D. Tex. Mar. 5, 2014) .....................................8

*OIP Techs., Inc. v. Amazon.com, Inc.*
    788 F.3d 1359 (Fed. Cir. 2015)....................................................................................................16

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
    No. 15-1955, 2016 U.S. Dist. LEXIS 83897 (E.D. Tex. June 28, 2016)......................... *passim*

*Smartwater, Ltd. v. Applied DNA Scis., Inc.*,
    No. 12-5731, 2013 U.S. Dist. LEXIS 139588 (E.D.N.Y. Sept. 27, 2013) ..............................10

*Sound View Innovations, LLC v. Facebook, Inc.*,
    No. 16-116, 2016 U.S. Dist. LEXIS 116012 (D. Del. Aug. 30, 2016) .....................................16

*Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*,
    No. 14-502, 2014 U.S. Dist. LEXIS 42466 (D.N.J. Mar. 26, 2014).............................................9

*Superior Indus., LLC v. Thor Global Enters.*,
    700 F.3d 1287 (Fed. Cir. 2012)......................................................................................................8

*TLI Commc'ns LLC v. AV Auto., L.L.C. (In re TLI Commc'ns. LLC Patent Litig.)*,
    823 F.3d 607 (Fed. Cir. 2016)......................................................................................................19

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
    No. 12-366, 2013 U.S. Dist. LEXIS 187806 (E.D. Tex. Feb. 7, 2013) .......................................8

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015) ........................................................................21

*VStream Techs., LLC v. PLR IP Holdings, LLC*,
    6:15-cv-00974-JRG-JDL, Dkt. No. 153 (E.D. Tex. Aug. 24, 2016) ...........................3, 5, 6, 7

*Walker Digital, LLC v. Google, Inc.*,
    66 F. Supp. 3d 501 (D. Del. 2014) ...........................................................................17

**Statutes**

28 U.S.C. § 1404 ................................................................................................................1

35 U.S.C. § 101 ..............................................................................................................2, 4

35 U.S.C. § 271(a) .........................................................................................................1, 5

35 U.S.C. § 271(b) .............................................................................................................9

35 U.S.C. § 271(c) ..............................................................................................2, 9, 10, 11

35 U.S.C. § 284 ..................................................................................................................1

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................1, 3, 11

Federal Rule of Civil Procedure 84 ...................................................................................3

Defendants FriendFinder Networks Inc. ("FFN"), FriendFinder California Inc. ("FFN-CA"), Various, Inc. ("Various") and Global Alphabet, Inc. ("Global Alphabet") (collectively, "Defendants"), move to dismiss Plaintiff GeoFriend, LLC's ("Plaintiff" or "GeoFriend") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## I.   <u>INTRODUCTION</u>

Plaintiff alleges that Defendants infringe "at least claims 1, 31, and 34" of U.S. Patent No. 8,108,414, entitled "Dynamic Location-based Social Networking" ("the '414 patent" or "the patent-in-suit").  Specifically, Plaintiff asserts: (i) direct infringement against all Defendants; (ii) induced infringement against FFN and FFN-CA; and (iii) contributory infringement against FFN-CA.  Plaintiff further suggests that the infringement alleged is willful under 35 U.S.C. § 284.  Each of Plaintiff's infringement claims fail for the reasons set forth below.  The pleading requirements for patent infringement are designed to ensure that plaintiffs allege a sufficient factual basis for claims and to put defendants on reasonable notice of those allegations. Plaintiff's boilerplate claims do neither, and should be dismissed.

Plaintiff's direct infringement allegations are conclusory and fall short of the pleading requirements set forth in *Twombly* and *Iqbal*; Plaintiff merely identifies the accused instrumentalities and recites the elements of 35 U.S.C. § 271(a), but fails to provide due notice to Defendants.   Plaintiff's claims of induced infringement fall within these deficient direct infringement claims.  Plaintiff also fails to allege sufficient facts to demonstrate the requisite

---

[1] In response to Plaintiff's Complaint, Defendants are seeking, in the first instance, a transfer out of the Eastern District of Texas to the Northern District of California pursuant to 28 U.S.C. § 1404.  Should this Court reject Defendants' transfer request, Defendants are seeking, in the alternative, a stay of this action pending full resolution of the patent reissue proceeding initiated by GeoFriend. If the Court is not inclined to either transfer or stay this action, Defendants are responding to the Complaint by way of this motion to dismiss.   All three motions (Defendants' Motion to Transfer, Motion to Stay, and Motion to Dismiss) have been filed contemporaneously with the Court.

specific intent to support a cause of action of inducement.  Plaintiff does not even attempt to plead specific intent:  its boilerplate allegations of contributory infringement recite the statutory language of § 271(c), but offer no factual support for such claim.

Beyond these threadbare allegations, the Complaint includes language that was copied from a prior pleading in an unrelated matter, referring to Plaintiff as "Filtalert."  Dkt. No. 1, at ¶ 3.  Moreover, each of Plaintiff's causes of action are copied nearly verbatim from a prior Filtalert pleading.  This alone warrants dismissal.

Substantively, the '414 patent claims are "directed to" the abstract concept of organizing human activity that has long been practiced, independent of computer technology, by people arranging for social events to occur at a given location, e.g., scheduling a dinner date or a tennis match or attending a concert or sporting event with friends.  The '414 patent claims do not add an inventive concept or technical innovation sufficient to transform the abstract idea into patent-eligible subject matter.  Moreover, the claims preempt all use of the abstract idea of connecting people who desire to carry out a group social activity at a designated location, applied on generic computer and communication components.  The asserted claims are patent-ineligible under § 101 and *Alice*, and are invalid as a matter of law. This ineligibility also, and independently, warrants dismissal.  Because Plaintiff cannot amend the Complaint to overcome the § 101 defect in the '414 patent, this case should be dismissed with prejudice.

## II.    <u>BACKGROUND</u>

Plaintiff commenced this action on July 20, 2016, alleging direct, indirect, and willful infringement of the '414 patent. The patent-in-suit is purportedly directed to "a computer implemented method of establishing a location-based social network" based on a user establishing a personal profile and a preference profile associated with a desired group social activity to occur within a range of possible locations, matching that user's profiles with the

profiles of others potentially interested in that same group social activity, and then putting the user and matched others in communication, as a location-based social network, to carry out that group social activity.  Dkt. No. 1, Ex. A at 1.  There are three independent claims:  claim 1 drawn to "a computer-implemented method of establishing a location-based social network;" claim 31 drawn to a "computer system;" and claim 34 drawn to a "computer program product" in a "computer readable storage medium."

III.    **APPLICABLE LAW**

A.    **Rule 12(b)(6) Standard**

To state an actionable claim, a plaintiff must allege and provide factual support for every element of the asserted claims.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Form 18 of Federal Rule of Civil Procedure 84, abrogated in December 2015, "no longer provides a safe harbor for direct infringement claims." *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 15-1955, 2016 U.S. Dist. LEXIS 83897, at *8 (E.D. Tex. June 28, 2016).  "Now, to state a claim for direct infringement, a plaintiff ***must explicitly plead facts*** to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Id*. (citations omitted) (emphasis added). To survive a motion to dismiss, a complaint must state a claim that is plausible on its face.  *See Iqbal*, 556 U.S. at 678.  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Factual allegations must be enough to raise a right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555.  Pleadings "that offer[] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).  Allegations of direct infringement must be pled "sufficient[ly] to 'permit [the] court to infer that the accused product

3

infringed each element of at least one claim.'"  *VStream Techs., LLC v. PLR IP Holdings, LLC*, 6:15-cv-00974-JRG-JDL, slip op. at 9 (E.D. Tex. Aug. 24, 2016) (Dkt. No. 153) (citing *Robern, Inc. v. Glasscrafters, Inc.,* 2016 WL 3951726, at *5 (D.N.J. July 22, 2016)).

A complaint fails to state a claim upon which relief may be granted if, as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  First, the Court will accept all well-pleaded facts as true, and view those facts in the light most favorable to the plaintiff.  *See LBS Innovations, LLC v. Nokia USA Inc.*, No. 15-1972, 2016 U.S. Dist. LEXIS 80303, at *5 (E.D. Tex. June 21, 2016).  But the Court **need not accept** as true conclusory or contradicted allegations within a complaint.  *See id.* at *6.  Next, the Court will consider "whether those alleged facts state a claim for relief that is 'plausible on its face.'"  *Id.* (citing *Twombly*, 550 U.S. at 570).  During its evaluation, a "court  may consider the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Ruby Sands LLC*, 2016 U.S. Dist. LEXIS 83897, at *6–7 (internal quotation marks and citation omitted).

### B.  <u>Patent-Ineligibility Under 35 U.S.C. § 101</u>

Section 101 of the Patent Act grants patents to inventors of, *inter alia*, new and useful processes.  *See* 35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347, 2354 (2014) (internal quotation marks and citation omitted); *see CyberSource Corp. v. Retail Decisions, Inc.* 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("[A] method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101.").  Patents "directed to" abstract ideas are analyzed under the *Alice* two-part test for determining patent-ineligibility:

First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, what else is there in the claims before us? To answer that question, we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an inventive concept . . . .

*Alice*, 134 S. Ct. at 2355 (internal quotation marks and citations omitted).

## IV.   ARGUMENT

### A.   Plaintiff's Infringement Allegations Fail To State A Claim Upon Which Relief Can Be Granted

#### 1.   Direct Infringement

Plaintiff alleges that all four named Defendants infringe "at least claims 1, 31, and 34" of the '414 patent.  *See, e.g.*, Dkt. No. 1 at ¶ 18.  Plaintiff's direct infringement allegations, however, are limited only to (i) a list of the accused instrumentalities (*i.e.*, the websites accused of infringement) and (ii) a formulaic recitation of the statutory language of 35 U.S.C. § 271(a). *See* Dkt. No. 1 at ¶¶ 18, 31–33.  The Complaint contains no factual support for Plaintiff's direct infringement claims, instead pleading only boilerplate language that is repeated verbatim for the other three defendants.  Dkt. No. 1 at ¶¶ 19–21, 39–40, 51–53, and 56–57.

Plaintiff's claims fall short of the post-Form 18 pleading standard for direct infringement. "[A]lthough allegations to the level of detail contained in infringement contentions are not required at the pleading stage, [citation omitted], ***there must be more than boilerplate conclusory statements to support a claim for relief***."  *VStream Techs., LLC*,  6:15-cv-00974, slip op. at 9 (citing *Twombly,* 550 U.S. at 570) (emphasis added).  Here, the Complaint avers nothing more than the very conclusory statements that the *VStream* court rebuked.  Plaintiff offers no explanation on how any of the accused instrumentalities allegedly infringe any limitation of any claim of the Patent-in-Suit.

In *VStream*, Judge Love recently dismissed direct infringement claims that offered far more factual detail than Plaintiff's claims here.  *Id*.  In dismissing those claims, the Court held:

> Plaintiff has not pled sufficient factual allegations to plausibly suggest its claims for patent infringement. Although Plaintiff has identified a long list of Defendants' allegedly infringing products, the key to patent infringement is not just identifying those products*, **but identifying how those products allegedly infringe the Asserted Patent claims***. Beyond Plaintiff's "specific example" in each of its induced infringement allegations, discussed further *infra*, there is no information in the FAC even attempting to tie the accused products to the overall technology described by the Asserted Patents, let alone tying the accused products to the claims of the Asserted Patents. . . .  There is simply not enough specificity to put Defendants on notice of the accused aspects of the accused products as they relate to representative claims of the Asserted Patents.

*VStream Techs., LLC*, 6:15-cv-00974, slip op. at 7 (emphasis added).

Like the direct infringement claims dismissed in *VStream*, Plaintiff's Complaint identifies a long list of accused websites, but makes no attempt to tie any of those sites to any claim of the '414 patent—let alone how those sites infringe every limitation of the claims.  For this reason, Plaintiff has not provided the requisite specificity to put Defendants "on notice of the accused aspects of the accused products as they relate to representative claims of the [Patent-in-Suit]." *Id*.

One of the three asserted claims (Claim 1) is a method claim—and "to adequately state a claim for direct infringement of a method claim, the complaint must allege that the accused infringer performed each ***step*** of the claimed method."  *LBS Innovations, LLC*, 2016 U.S. Dist. LEXIS 80303, at *6 (emphasis added). The Complaint is silent as to the numerous method steps of Claim 1.  Moreover, because that method claim necessarily requires third parties to perform certain steps claimed therein (*see* claim chart provided in Appendix A), Plaintiff must plead sufficient facts to demonstrate that each Defendant "directs or controls" such third party action. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015);  *see LBS Innovations, LLC*, 2016 U.S. Dist. LEXIS 80303, at *6–7 ("[w]here the actions of multiple

entities combine to perform every step of a claimed method, the claim is directly infringed by an entity only if [] that entity 'directs or controls' the performance of others").

Claim 1 recites action performed by a "user" and "members."  *See, e.g.*, Dkt. No. 1 at Claim 1 ("wherein the location and the range are ***selected by the user . . .*** upon ***mutual confirmation between the user and the one or more of the identified potential members . . .*** the personal profile ***created by the user***") (emphasis added).  But, Plaintiff makes no attempt to plead joint infringement in the manner required by *Akamai*.

Because Plaintiff fails to allege facts that suggest a plausible claim, its direct infringement claims must be dismissed as a matter of law.[2]

### 2.    Induced Infringement

Plaintiff fails to state a claim upon which relief can be granted with respect to its claims of inducement.  Here, Plaintiff does not even attempt to plead specific intent, offering no factual allegations as to Defendants' state of mind, but merely a barebones recitation of the elements of the claim.  *See, e.g.*, Dkt. No. 1 at ¶¶ 22, 35–37.

"To state a claim for induced infringement, a plaintiff must allege facts to plausibly support the assertion that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement."  *Ruby Sands LLC*, 2016 U.S. Dist. LEXIS 83897 at *8 (citing 35 U.S.C. § 271(b)). Stated differently, the plaintiff must demonstrate that a defendant had knowledge of both the allegedly infringed patents—and that the acts it supposedly induced constituted patent infringement.  *See In re Bill of Lading*, 681 F.3d at 1339 (emphasis added) ("To survive [a] motion to dismiss [an induced

---

[2] Because Plaintiff's direct infringement claim fails, contributory and induced infringement also fail, as such claims require an act of direct infringement.  *See VStream Techs., LLC*, 6:15-cv-00974, slip op. at 7; *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012).

infringement claim] . . .  must contain facts plausibly showing that [the alleged infringer] *specifically intended* their customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement.").

Plaintiff's inducement allegations here are even weaker than those that are regularly dismissed.  *See, e.g.*, *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 12-366, 2013 U.S. Dist. LEXIS 187806, at *11 (E.D. Tex. Feb. 7, 2013) ("[Plaintiff's] allegations that [defendant] 'supplies' infringing systems and components and provides 'instructions' to its customers who allegedly infringe do not create a reasonable inference of inducement.").  Indeed, GeoFriend provides no specific examples evidencing specific intent, nor addresses specific intent.  For this reason, Plaintiff's inducement claims should be dismissed.  *See id.*; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (to plead inducement, a plaintiff must show **sufficient** *facts* that "the alleged infringer . . . possessed specific intent to encourage another's infringement") (emphasis added); *Norman IP Holdings, LLC v. Chrysler Grp. LLC*, No. 13-278, 2014 U.S. Dist. LEXIS 185498, at *10 (E.D. Tex. Mar. 5, 2014) ("Norman's allegation that Toyota induced customers to infringe the Patent-in-Suit by 'provid[ing] related services, specifications, and instructions for the installation and infringing operation of' systems such as 'Safety Connect' and 'Lexus Enform' is too conclusory."); *Superior Indus., LLC v. Thor Global Enters.*, 700 F.3d 1287, 1295 (Fed. Cir. 2012) ("[Patentee] does not allege any facts to support a reasonable inference that [accused infringer] specifically intended to induce infringement . . . .").

Plaintiff also fails to allege how any third party directly infringes any claim of the patent-in-suit as a result of the purported inducement.  Instead, Plaintiff relies on conclusory language.

8

Dkt. No. 1 at ¶ 22 ("GeoFriend learned that FFN is knowingly ***inducing others, including its subsidiaries, to infringe*** at least claims 1, 31, and 34") (emphasis added).  This is insufficient.

Lastly, Plaintiff fails to allege that Defendants had any pre-suit knowledge of the Patent-in-Suit, despite alleging that FFN and FFN-CA indirectly infringed one or more claims of those patents ***prior to the commencement of this action***.  *See id.* at ¶¶ 35–37; 43–45.  To this point, Plaintiff avers that "it ***has been damaged*** by FFN's inducement of infringement." *Id.* at ¶ 36. The same claim is made against FFN-CA.  *Id.* at ¶ 44. Plaintiff's use of the past tense to describe its purported damages from inducement suggests that Plaintiff is seeking pre-suit damages for its inducement claims.  But Plaintiff cannot seek pre-suit damages for inducement when Defendants had no pre-suit knowledge of the '414 patent.  *See* 35 U.S.C. § 271(b).  Dismissal is thus warranted for all inducement claims based on any pre-suit activity of Defendants.

Because Plaintiff, *inter alia*, fails to adequately plead specific intent and fails to identify the actual infringing activity of third party entities, its indirect infringement claims must be dismissed as a matter of law.

### 3.    Contributory Infringement

Plaintiff inadequately pleads contributory infringement against one defendant—FFN-CA.

Allegations of contributory infringement require "facts to plausibly support the assertion that there was (1) an act of direct infringement; (2) that the defendant knew that the combination for which its components were especially made was both patented and infringed; and (3) the components have no substantial non-infringing use."  *Ruby Sands LLC*, 2016 U.S. Dist. LEXIS 83897, at *9 (citing 35 U.S.C. § 271(c)); *see Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1312 (Fed. Cir. 2005)).  Merely quoting the statutory language of § 271(c) is insufficient. *See, e.g.*, *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. 14-502, 2014 U.S. Dist. LEXIS 42466, at *9–10 (D.N.J. Mar. 26, 2014) ("Plaintiff relies on

conclusory statements to support its contributory infringement claims. . . . These statements are parroting the language of the necessary elements to support a contributing infringement claim").

Here, the Complaint merely recites the statutory language of § 271(c) without providing any factual detail to support the claim.  Dkt No. 1 at ¶¶ 24, 47–49.

In *Smartwater*, the court dismissed similar claims of contributory infringement and explained "[o]ther than reciting that there are no substantial noninfringing uses, however, Plaintiff offers virtually no factual support. Plaintiff merely identifies its products and Defendant's 'Marking Products,' and then repeats the elements of a contributory infringement claim.  This is insufficient."  *Smartwater, Ltd. v. Applied DNA Scis., Inc*., No. 12-5731, 2013 U.S. Dist. LEXIS 139588, at *31–32 (E.D.N.Y. Sept. 27, 2013).  Moreover, it is well-established that merely stating that the accused products "have no substantial non-infringing uses" fails to satisfy pleading standards to support a contributory-infringement claim.  *InMotion Imagery Techs. v. Brain Damage Films*, No. 11-414, 2012 WL 3283371, at *4 (E.D. Tex. Aug. 10, 2012).

And as with its inducement claims, it appears that Plaintiff is alleging pre-suit liability for its claims of contributory infringement against FFN-CA.  Dkt. 1 at ¶ 48 ("GeoFriend **has been** damaged by FFCA's contributory infringement of the Patent. GeoFriend is entitled to recover from FFCA the damages sustained by GeoFriend as a result of FFCA's wrongful acts.") (emphasis added).  But Plaintiff cannot seek pre-suit damages for contributory infringement when FFN-CA had no pre-suit knowledge of the Patent-in-Suit.  *See* 35 U.S.C. § 271(c).  Thus— irrespective of the Defendants' other arguments in this section—all claims of contributory infringement seeking pre-suit liability should be dismissed as a matter of law.

Because Plaintiff's contributory infringement claims simply recite the statutory elements of § 271(c) without providing facts in support, those claims should be dismissed.

### 4.    Plaintiff's Claims Were Copied from an Unrelated Case.

Plaintiff's Complaint also includes select language that was clearly copied from a prior pleading in an unrelated matter.  The Complaint refers to "Filtalert" instead of "GeoFriend" when referring to Plaintiff.  Dkt. No. 1 at ¶ 3 ("***Filtalert*** alleges direct patent infringement against FFN") (emphasis added).  Filtalert is a plaintiff in a recent unrelated patent litigation filed in July 2015 (*Filtalert Corp. v. International Business Machines Corp. et al*.; Civil Action No. 1:15-cv-22845-DPG (S.D. Fla.)), and is represented by the same law firm representing GeoFriend in the present action.  The causes of action are copied nearly verbatim from that prior, unrelated *Filtalert* Complaint.  *See id.*

These facts alone justify dismissal.  *See Ruby Sands, LLC*, 2016 U.S. Dist. LEXIS 83897, at *14 (emphasis added) ("The Court finds that the ***'inadvertent' inclusion of language presumably taken from a pleading directed to a different case***, and completely unrelated to the Patent-in-Suit, is indicative of the kind of cut-and-paste pleading practices that Rule 12(b)(6) was meant to address.").

### B.   The Patent-in-Suit Is Directed to Unpatentable Subject Matter and Claims an Abstract Idea

**1.   *Alice* Step One: The '414 patent claims are "directed to" the abstract idea of connecting people who desire to carry out a group social activity at a designated location.**

The '414 patent defines "dynamic location-based social networking" as "a social network defined by geographic location and range."  '414 patent, 1:57–59.  It explains that "[s]ocial networking services allow users to create and join social groups with common interests and activities."  *Id.*, 1:21–22.  Conceding that web-based social networks were known and enable geographically remote users to establish contacts with each other (*id.*, 1:21–44), the '414 patent posits that "there is a need for a method and system for location-based dynamic social networking" and suggests its innovation "integrates ***existing*** features of web based social

networking and enable *existing* social networks to be tailored to enhance communications in different social contexts and locations." *Id.*, 1:48–53 (emphasis added).

Method claim 1 is representative of all the claims. *See* Appendix A.[3]  It is set forth below in a claim chart that demonstrates how the limitations compare to a known abstract process of organizing human activity, namely a person suggesting a dining club to a user looking to meet people when travelling, an activity that can be performed by pen and paper and telephone:

| '414 Patent Claim 1 | Routine steps to suggest a dining club for a traveler according to traveler's preferences. |
|---|---|
| A computer-implemented method of establishing a location-based social network, wherein the method utilizes at least one computer processor to implement steps of: | Jane Doe desires to meet new friends while getting dinner while travelling to Sherman, Texas. The town has several dining clubs of different type and quality at different locations. |
| providing a client application on a communications device of a user; | Jane calls or emails a travel agent, John Smith. |
| creating a personal profile and a preference profile by the user using the client application, wherein the preference profile refers to characteristics sought by the user in potential members of the location-based social network; | Jane also provides (1) her name, age, address, and the times she will be in Sherman; (2) what type of food she likes to eat; and (3) some characteristics of people she wants to meet (e.g., sex, age, and marital status). |
| transferring the personal profile and the preference profile to a social networking server using the client application by the user; | John reviews Jane's personal and preference profiles, maybe records it on paper and places it into a 3-ring binder. |
| registering a location for the location-based social network by the social networking server; | John reviews the binder of information to determine which dining clubs in Sherman are suitable for Jane's preferences. |
| identifying the potential members within the registered location and the registered range, comprising: | John also considers what club members are suitable, at each of the available dining clubs, according to Jane's expressed preference (the preference profile). |
| calculating distance between the user and the potential members based on the registered location and the registered | John identifies the potential club members based on where they live and how far away they are from each of the available dining clubs and |

---

[3] Claims 31 and 34 are computer- and computer-media implementations of the abstract idea of method claim 1, as can be seen from the trivial differences in the limitation-by-limitation claim chart set forth in Appendix A.

| | |
|---|---|
| range of the user, and registered location and registered range of each of the potential members; | whether they can get to the available dining clubs by the preferred dining time. |
| determining overlaps found between the registered location and the registered range of the user and, registered locations and registered ranges of the potential members; | John looks for overlaps between Jane's preferences, e.g., type of food, personal characteristics, etc., and those of the potential club members, to find a match for Jane. |
| creating a network among the potential members, wherein the registered range of each of the potential members overlaps the registered range of the user; and | John creates a list of potential club members for a match with Jane based on each potential member's proximity to each dining club and their respective preferences. |
| matching personal profile of each of the potential members within the created network with the preference profile and the personal profile created by the user; | John matches the potential club members to Jane's preference profile by considering the potential players' age, sex, marital status, and availability to meet up for dinner (personal profiles). |
| providing a communications link between the user and one or more of the identified potential members upon mutual confirmation between the user and the one or more of the identified potential members; | John contacts Jane, via email, cell or otherwise, with the telephone number for Jane to call and the identified matched club members to set up dinner at a given dining club. |
| determining a social value score of a location based on weighted characteristics of the location, members in the location, weighted importance of relationship between the user and the members, and weighted keywords of interest to the user, wherein the social value score is used by the social networking server to suggest locations of highest social value to the user; | Jane reviews the available club members that have been ranked to suggest dining clubs of greater interest to Jane, based on reviews of the dining clubs and who, when, and where she wants to eat with, according to her preferences for a type of food; a dining partner of the same, older, or younger age; a male or female dining partner, etc. (weighted characteristics). |
| whereby the communications link establishes the location-based social network based on the preference profile of the user. | Jane then calls the club members to schedule time for dinner. |

The many steps of claim 1 fall into four basic activities:  (1) collecting certain information from one user to hold a proposed social event within a geographic region, (2) analyzing the user-provided information and information collected from potential participants in that social event, (3) identifying potential matches, and (4) providing a link so the user and

matching participants can communicate to carry out the social event.  Emphasizing the abstract nature of the claims, the social event claimed is undefined and unspecified.

Significantly, the '414 patent describes the "computer implemented method" of claim 1 using only conventional processors, memory devices, databases, and communication networks and devices.  *See* '414 patent, 17:11–18:34.  More specifically, the "computer processor" called for in the claims is "any one or more microprocessors, Central Processing Unit (CPU) devices, computing devices, microcontrollers, digital signal processors, or like devices." '414 patent, 17:27–30.  A "communications device" is "any mobile or stationary communications device having connectivity to the social networking server 201 such as a cell phone 202 b, a laptop computer 202 a, etc." '414 patent, 5:26–29.  The "social networking server" is defined only with respect to the generic functions it performs, not by any unique or novel structure.  Likewise, a "communications link" is defined by the social networking server function:   "The social networking server 201 provides 106 a communications link between the user and the identified potential members upon mutual confirmation between the user and the identified potential members." '414 patent, 5:13–17.[4]  Similarly, the term "client application" has no defined structure, but rather is something a user uses.  *See* '414 patent, 1: 59–63 (to create a personal profile and a preference profile), 4:39–41 (transferring profiles to the social network server), and 6:46–50 (provides a graphical user interface for creating profiles).

No reference is made in the '414 patent to any special-purpose computer or communications equipment, or to any technological improvement thereof.  Nothing in the '414

---

[4] To the extent GeoFriend would assert that a communications link is a transmission medium, the latter is described only in conventional terms:   "Transmission media include coaxial cables, copper wire and fiber optics, including the wires that comprise a system bus coupled to the processor. Transmission media may include or convey acoustic waves, light waves and electromagnetic emissions, such as those generated during Radio Frequency (RF) and Infrared (IR) data communications." '414 patent, 17:41–44.

patent claims or specification suggest that the claim limitations have any special meaning beyond the generic computer and communication functions they describe with respect to collecting information, analyzing the collected information, identifying potential network members, and communicating the results of that analysis.

The method claim limitations—the steps of providing, creating, transferring, registering, identifying, calculating distance, determining overlaps, creating a network, matching, providing a communications link, and determining a social value score—merely recite conventional functions carried out on generic computer and communication components as those devices are known to be used.  As such, they set forth an abstract concept of organizing human activity— connecting people who desire to carry out a group social activity at a designated location, exemplified by arranging dinner at a dining club—but nothing transformative or inventive.  *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo, N.A.,* 776 F.3d 1343, 1347 (Fed. Cir. 2014) ("1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" does not impart patent eligibility); *OIP Techs., Inc. v. Amazon.com, Inc.* 788 F.3d 1359, 1363–64 (Fed. Cir. 2015) (same, in that "gathering statistics" of customer response was "routine, conventional data-gathering" that did not supply an inventive concept to an abstract idea); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (claims an abstract idea where "[t]he series of steps covered by the asserted claims—borrower applies for a loan, a third party calculates the borrower's credit grading, lenders provide loan pricing information to the third party based on the borrower's credit grading, and only thereafter (at the election of the borrower) the borrower discloses its identity to a lender—could all be performed by humans without a computer"); *see also*

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 n.2 (Fed. Cir 2015) (collecting cases).

In other words, because the '414 patent claims focus on tasks for which a computer is used in its ordinary capacity, and not an improvement to computer functionality itself, the claims are an abstract idea under *Alice* step one. *Cf. Enfish, LLC v. Microsoft Corp.*, 822 F.3d. 1327, 1337, 1339 (Fed. Cir. 2016) (claims directed to a self-referential table for a database found not to be abstract, but an improvement of existing technology—a specific implementation of a solution to a problem in the software arts).

Courts have considered claims with similar functionality to the '414 patent claims that:

"describe the interaction of information sources and user terminals in a computer network, and the components of the system that are used to identify and transmit more useful electronic information to user terminals than prior art systems" . . . [and that] determin[e] community information preferences according, to the claimed invention enables electronic information sources "to send information that match the preferences of the first user but also the preferences of the buddies of the first user in this way provisioning the first user with information that better suit the interest of the first user."

*Sound View Innovations, LLC v. Facebook, Inc.*, No. 16-116, 2016 U.S. Dist. LEXIS 116012, at *12 (D. Del. Aug. 30, 2016). The *Sound View* court found that the asserted patent was for a patent-ineligible abstract idea "directed to the concept of offering more meaningful information to an individual based on his own preferences and the preferences of a group of people with whom he is in pre-defined relationships." *Id.*, at *14.

In the same way, the '414 patent claims a method for collecting and analyzing information according to the preferences of a user and produce a result, and are directed to an abstract idea. *See id.; Electric Power Grp., LLC v. Alstom S.A.*, No. 2015-1778, 2016 U.S. App. LEXIS 13861, at *7–9 (Fed. Cir. Aug. 1, 2016) (holding lengthy claims with numerous elements focused on "collecting information, analyzing it, and displaying certain results of the collection

and analysis" an abstract idea despite combining three separate patent-ineligible concepts); *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508–09 (D. Del. 2014) (footnote omitted) (claims held abstract, finding "none of these [claim] limitations adds anything meaningful to the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters—and as disclosed in the patent specification itself.[] By contrast, all of these steps could be performed (and have been performed) by human beings interacting with one another prior to the filing of the [asserted] patent.").

Further, '414 patent claim 1 would preempt all use of the claimed abstract idea on well-known computer and communication components.  *See Intellectual Ventures I LLC*, 792 F.3d at 1371 (preempting use on "the Internet, on a generic computer"); *Content Extraction,* 776 F.3d at 1348 (preempting use on well-known generic scanning devices and data processing technology); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344–45 (Fed. Cir. 2013) (preempting use on generic computer components performing conventional activities); *Electric Power Grp.*, 2016 U.S. App. LEXIS 13861, at *13–15 (finding patent-ineligible claims were result-focused and functional so as to monopolize every potential solution to the problem and noting such claims would inhibit innovation by prohibiting other inventors from developing their own solutions without first licensing the abstract idea).

Accordingly, method claim 1 describes an abstract idea of connecting people who desire to carry out a group social activity, according to the preferences provided by the user seeking to form the social network, and the preferences of the would-be participants, using generic computer and communications equipment.

### 2. *Alice* Step Two: No inventive concept is present in the '414 patent claims.

Scrutiny of the abstract idea of method claim 1 under step two of *Alice* reveals that there is no feature, specialized equipment, algorithm, or particular technological environment that converts the abstract idea into "something more" to make it patent-eligible. This is true considering the elements of the claim individually and even more so, as an ordered combination.

The '414 patent claims, as represented by claim 1, are broadly cast to a "location-based social network," a group to be formed once the user provides preferences and a location and geographic range. The type, purpose or function of the social network, as noted, is unspecified in the claims, and barely addressed in the specification. *See* '414 patent, 3:29–31 ("affinity groups such as groups for friends, family, work friends, football team, sorority sisters, etc."); 3:40–42 ("locations or 'hot spots' where friends or new contacts providing the greatest social value are gathered."). Further, the claim language does not limit the application of the abstract idea to a particular technological environment. *See Alice,* 134 S. Ct. at 2358 ("*Flook* stands for the proposition that the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the abstract idea] to a particular technological environment.") (internal citation omitted).

The claim limitations, taken either singly or in combination, fail to provide a technical innovation in the otherwise generic computer and communication components implementing the abstract idea. *See Mortgage Grader*, 811 F.3d at 1324 (no inventive concept is present when the claims "'add' only generic computer components such as an 'interface,' 'network,' and 'database.'") (quoting *Intellectual Ventures I LLC*, 792 F.3d at 1370 ("[T]he interactive interface limitation is a generic computer element.")); *cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773

F.3d 1245, 1248 (Fed. Cir. 2014) (the asserted claims were patent-eligible because they "[overrode] the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink"); *Motio, Inc. v. ESP Software LLC*, 154 F.Supp.3d 434, 438, 439–40 (E.D. Tex. 2016) (finding claims drawn to an "abstract concept of maintaining versions of electronic documents" patent eligible because of an "automated agent" limitation that "solve[s a computer-specific] problem of a business intelligence system lacking native version control that amounts to significantly more than a patent on the idea of maintaining versions of electronic documents itself.").

In short, there is no inventive concept—no specific computer problem solved and no innovative hardware—that makes the '414 patent claims "more than simply stating the abstract idea while adding the words apply it" on a computer.  *Alice*, 134 S. Ct. at 2357 (original quotation marks and brackets omitted); *see TLI Commc'ns LLC v. AV Auto., L.L.C.* (*In re TLI Commc'ns. LLC Patent Litig.*), 823 F.3d 607, 612 (Fed. Cir. 2016) (noting that claims directed to "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two" will likely not be found patent-eligible).

### a.  Dependent claims 2–30 add nothing of substance to claim 1, and are similarly patent-ineligible.

The same abstract idea result obtains for claims 2–30 depending from method claim 1, insofar as their limitations add nothing of consequence that, when considered individually or as part of an ordered combination (*Alice*, 134 S. Ct. at 2359–60), lift the '414 patent into patent eligibility.  Many of the dependent claims do no more than specify what information the user provides (data collection) to be analyzed, or the result obtained (token, extra-solution activity), by the generic steps set forth in claim 1.

19

Specifically:  Claims 2 and 30 concern selecting the user's previously stored profile from the server; Claim 3 adds a "relationship criteria" to a preference profile; Claims 4 and 5 further define a potential member as an "actual" or "virtual" potential member; Claims 6 and 7 concern an "optimal place and time to hold a social event" based on analysis of the participants' profiles; Claims 8-14 concern employing a conventional "menu-driven graphical user interface" to collect information for use in the analysis; Claim 15 concerns performing searches based on data analysis; Claim 16 provides using a conventional global positioning system to collect data on location and range; Claim 17 concerns storing data about multiple preferred locations; Claim 18 defines the personal preference to collect data on physical, non-physical, and clothing characteristics; Claims 19-22 concern collecting visual and descriptive data to target potential social network members; Claims 23–26, 28, and 29 address applying weights to the collected information to produce an information-based result; and Claim 27 concerns using conventional keyword searching of text communications among network members.

To demonstrate an inventive step, the claims must recite a specific, discrete implementation of the abstract idea found in *Alice* step one.  *See BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (finding an inventive concept where "[f]iltering content on the Internet was already a known concept, and the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content").  Courts have found the inventive concept lacking where the claims merely recite "the use of generic features of cellular telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals to implement the underlying idea." *Affinity Labs of Tex. v. DIRECTV, LLC*, No. 2015-1845, 2016 U.S. App. LEXIS 17371, at *21 (Fed. Cir. Sep. 23, 2016) (citation omitted) (noting that

20

"'simply appending conventional steps specified at a high level of generality' to an abstract idea does not make that idea patentable").

Taking the '414 patent claims as an ordered combination, the patent remains ineligible because no inventive step can be discerned.  The claims merely apply the abstract concept of connecting people who desire to carry out a group social activity, according to the preferences provided by the user seeking to form the social network, and the preferences of the would-be participants, using generic computer and communications equipment.

None of the dependent claims adds an articulable innovation to a computer function, a specific application, or an inventive concept to the abstract idea of representative method claim 1.  The dependent claims 2–30 therefore also are drawn to abstract ideas that are patent-ineligible.

<b>b.      The '414 patent claims fail the Machine-or-Transformation Test.</b>

Although no longer conclusive, the machine-or-transformation ("MOT") test still remains a useful clue in the *Alice* step two analysis. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015).  Here, the '414 patent claims fail the MOT test.  First, the claims are not tied to a novel machine, but rather to conventional computer and communication components.  Second, the method of collecting, analyzing, and matching personal preferences may be a laudable entrepreneurial business, but using computer and communication components in their ordinary capacity does not effect a transformation of any article to a different state or thing.  It does not amount to an innovative technological advance.

That the '414 patent claims fail to pass the MOT test is instructive and a strong confirmation that they are directed to a patent-ineligible abstract concept of connecting people who desire to carry out a group social activity at a designated location.

### c.      Claims 31–34 are Patent-Ineligible.

Independent claim 31 of the '414 patent is drawn to a computer system, and independent claim 34 is drawn to a computer readable media.  As the Federal Circuit recognized:

> Regardless of what statutory category ("process, machine, manufacture, or composition of matter," 35 U.S.C. § 101) a claim's language is crafted to literally invoke, we look to the underlying invention for patent-eligibility purposes.

*CyberSource Corp.*, 654 F.3d at 1374.  Here, the alleged invention underlying claims 1, 31, and 34 is the computer-implemented method of establishing a location-based social network, not a system or a manufacture for storing a computer readable medium.  Indeed, this can be readily seen from the limitation-by-limitation comparison of claims 1, 31, and 34 set forth in Appendix A, read in the context of the '414 patent specification.  As demonstrated above, representative method claim 1 recites an abstract idea implemented on a generic computer and communications components.  The system and computer readable media claims are no different in substance from, and add nothing to, the claimed method.  *Id.* at 1374 (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction).

Although the computer system claim may include elements such as a "computer processor," a "computer memory," a "social networking server", a "geocoding module," etc., these elements do not impart the "something more" required by *Alice* to obtain patent eligibility. Rather, as noted in *Alice*, 134 S. Ct. at 2360:

> [T]he system claims recite a handful of generic computer components configured to implement the same idea. This Court has long "warn[ed] . . . against" interpreting § 101 "in ways that make patent eligibility 'depend simply on the draftsman's art.'" *Mayo, supra*, at __, 132 S. Ct., at 1294 (quoting *Flook*, 437 U.S., at 593, 98 S. Ct. 2522); see *id.*, at 590, 98 S. Ct. 2522 ("The concept of patentable subject matter under § 101 is not 'like a nose of wax which may be turned and twisted in any direction . . . '"). Holding that the system claims are patent eligible would have exactly that result.

Claim 31 refers to a so-called geocoding module.  But this element is simply a functional aspect of a conventional computer component that performs a well-known function of collecting input data—registering the location and range selected by the user for the place where the social activity will occur.  '414 patent, 6:54–57, 7:51–56.  That this limitation does not impart patentable subject matter is confirmed by noting that its function could be performed by a person using pen and paper.

Claims 32 and 33 depend from claim 31, and add further generic functions relating to a conventional graphical user interface for data collection—the user inputting information (claim 32), and acquiring conventional data—information and a global positioning feed as normally provided by a conventional and known communication device (claim 33).  Such generic computer functions, which also could be performed using pen and paper, do not define an additive inventive concept sufficient for patent eligibility.

Independent claim 34 to computer readable media certainly adds no more than the patent-ineligible system claims 31–33 to the abstract idea of method claim 1.  *See* Appendix A.  Rather, claim 34 is nothing more than a computer readable medium containing program instructions for executing the method of claim 1.  *See CyberSource Corp.*, 654 F.3d at 1374.  It is clear from the similarities between claims 1 and 34, and likewise between claims 31 and 34, that claim 34 adds nothing of substance and no inventive concept to the underlying abstract idea.  Claim 34, too, is patent-ineligible.

*        *        *

The '414 patent claims are directed to the abstract idea of connecting people who desire to carry out a group social activity at a designated location, bereft of any inventive concept, and therefore, are patent-ineligible.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's Complaint should, respectfully, be dismissed with prejudice in its entirety.

Dated: September 30, 2016

By: *<u>/s/ Andrew W. Stinson</u>*

Andrew W. Stinson
State Bar No. 24028013
**RAMEY & FLOCK PC**
100 East Ferguson, Suite 500
Tyler, Texas 75702
Telephone (903) 597-3301
astinston@rameyflock.com

Frank M. Gasparo
Ralph A. Dengler
Todd M. Nosher
**VENABLE LLP**
1270 Avenue of the Americas
Twenty-Fourth Floor
New York, New York 10020
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598
fmgasparo@venable.com
radengler@venable.com
tmnosher@venable.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that the all counsel of record who are deemed to have consented to electronic service are being served this 30th of September 2016, with a copy of this document via electronic mail.

*/s/ Andrew W. Stinson*
Andrew W. Stinson